Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CARL A. BOGGS, III, and LEAH BOGGS,<br><br>        Plaintiffs,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, and BLUE OPTIONS PPO<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. 2:20-cv-00632-DBB<br><br>Judge David Barlow |

**COME NOW** Carl A. Boggs, III and Leah Boggs, collectively, individually and through their undersigned counsel, complain and allege against the above-captioned defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Carl A. Boggs, III ("Carl") is a natural person residing in Monroe, North Carolina. He is covered by Blue Cross Blue Shield of North Carolina, Blue Options PPO, ("the Plan") provided through Carl's employer, Boggs Paving.

2.      Plaintiff Leah Boggs ("Leah") is a resident of Monroe, North Carolina. As a beneficiary of her father's health insurance plan, she received treatment at Open Sky Wilderness ("Open Sky"), a licensed residential treatment facility in Durango, Colorado from July 14, 2017, through September 27, 2017.

1

3. Blue Cross Blue Shield of North Carolina ("Blue Cross Blue Shield") does business in the State of Utah as Blue Cross Blue Shield does business in all 50 states. The appeals were written by Denials Management, Inc. ("DMI") which is located in Salt Lake City, Utah.

4. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

5. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the Defendants do business in the State of Utah and the appeals were written by a company located in Salt Lake City, Utah.

6. Plaintiffs seek payment of Leah's denied claims from July 14, 2017, through September 27, 2017 pursuant to 29 U.S.C. §1132(a)(1)(B) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. Starting in the 9th grade, Leah started purging to try to lose weight and experimenting with substances such as alcohol and marijuana. She drank heavily.

9. Leah started residential treatment at Timberline Knolls Residential Treatment Center. She stayed in residential treatment for about a month.

10. Leah's mother also suffered from an eating disorder for 15+ years. Her mother is also a 3rd generation alcoholic.

11. Leah had several physical altercations with her sister and her mother.

12. During highschool, Leah was diagonosed with ADHD and was prescribed medication for this.

13. Leah was hospitalized at the Physchiatric Unit or Carolinas Medical Center for threatening suicide and excessive intoxication.

14. Leah's father spent 13 months in Federal Prison in which Leah had to stay with her mother.

15. During this time, Leah witnessed her mother having extramartial affairs, got into several altercations with her mother and was verbally abused.

16. Leah and her sister moved out of the home with their mother, and moved in with their uncle and spent weekends with their father, during the week he was staying at a halfway house.

17. In May of 2017, Leah was arrested and charged with Felony Assuault on a Law Enforcement Officer. At that point, her behavior was viewed as an emergency and she was admitted to Open Sky Wilderness Therapy.

18. Leah stayed in Open Sky Wilderness Therapy until graduation, returned home and continued outpatient therapy at Hopeway Center.

### Pre-Litigation Appeal of the Plan's Denial of Coverage for Leah's Care

19. The Bogg's first received notice of Leah's denied coverage of her treatment at Open Sky through convoluted EOB's they received in the mail.

20. Carl submitted a level one member appeal to the Plan on December 13, 2018. They requested a review as to why the claims from July 14, 2017, through September 27, 2017, were denied.

21. On December 20, 2018, the Plan sent the Bogg's a letter stating the request should be handled by Magellan Healthcare ("Magellan") and forwarded the request for review to Magellan.

22. Magellan did not respond to the first appeal until March 5, 2019, more than 30 days as stated in the policy after the appeal was filed.

23. Magellan upheld the denial, based on the 2019 Magellan Care Guidelines for Residential Behavorial Health Level of Care.

24. Specifically, Leah's treatment at Open Sky was denied coverage because her her "symptoms do not appear to require a 24-twenty four (24) hour per day, seven (7) day per week treatment facility…"

25. Carl's healthcare advocate followed up with the Plan regarding the appeal on January 22, 2019.

26. The Plan informed Carl's healthcare advocate that a Magellan specific authorization for release of protected health information ("PHI") was needed. There was already a PHI form that was submiteed with the appeal, however the new PHI was mailed on February 11, 2019 and was returned to sender.

27. Carl's healthcare advocate then faxed the PHI on February 19, 2019 and a second time on February 26, 2019 to both the Plan and Magellan.

28. On February 27, 2019 Carl's healthcare advocate called the Plan to request a status update on the appeal and was informed that the Plan could not locate the appeal and advised contacting the Care Management department for further research. According to the Care Mangement department the appeal was deemed invalid due to missing information, however no correspondence of such was sent to the Bogg's and had no record of which information was missing.

29. Carl's healthcare advocate continued to try and gather more information regarding this enormous confusion. After being transferred repeatedly and having left voicemails she was

unsuccessful.

30. March 26, 2019, Carl wrote a complaint to the North Carolina Dpartment of Insurance due to the Plan's delayed response to the level one member appeal.

31. April 10, 2019, the Plan wrote a letter to the North Carolina Department of Insurance stating that Magellan's records indicate a decision was made on January 14, 2019, Magellan was unable to produce a copy of the letter, however the Plan attached a duplicate copy which was generated on March 5, 2019, the first response the Bogg's had received from Magellan.

32. Carl submitted a level two member appeal on August 22, 2019, requesting necessary documents to conduct a parity analysis. The Bogg's family argued that the Plan violated the Parity Act through it's use of non-quantative treatment limitations ("NQTL's") that only applied to mental health claims.

## CAUSES OF ACTION

(Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B))

33. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

34. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

35. The Plan's actions or failures to act constitute a breach of its fiduciary duties to the Bogg's Family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for Leah's claim denial, written in a manner calculated to be understood by

the Bogg's Family;  2) by failing see that Leah was a threat to herself and others 3) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the Leah's claim.

## Claim for Relief for Violating the Parity Act

36. Congress enacted the Parity Act as an amendment to ERISA, making it enforceable through a cause of action under 29 U.S.C. § 1132(a)(3) as a violation of a "provision of this subchapter." *A.F. ex rel. Legaard v. Providence Health Plan,* 35 F.Supp.3d 1298, 1304 (D.Or.2014); *see also* 29 U.S.C. § 1132(a)(3)(A)-(B).

37. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

38. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

39. The Plan violated the Parity Act by denying provides services that are less intensive than acute hospitalization and more intensive than outpatient therapy.

40. The actions of Blue Cross Blue Shield in failing to provide coverage for Leah's treatment violate the terms of the Plan, ERISA and its underlying regulations, and the Parity Act.

41. The actions of Blue Cross Blue Shield has caused damage to the Bogg's Family in the form of denial of payment of Leah's treatment.

42. Blue Cross Blue Shield is responsible to pay for Leah's treatment claim along with pre-judgment interest and attorney's fees and costs pursuant to 29 U.S.C. §1132 (g).

## RELIEF

WHEREFORE, Plaintiffs seeks relief as follows:

43. Judgment in the amount of Leah's past due treatment claim from July 14, 2017, through September 27, 2017.

44. Pre- and post-judgment interest on the past due benefits pursuant to U.C.A. §15-1-1;

45. An award of attorney fees pursuant to 29 U.S.C. §1132(g); and

46. For such further relief as the Court deems equitable.


RESPECTFULLY SUBMITTED this 9th day of September, 2020.


G. ERIC NIELSON & ASSOCIATES


  */s/ Laura Nielson*
Laura Nielson
Attorney for Plaintiff